UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ESTATE OF JOHN BUONOCORE III, *et al.*,

    Plaintiffs,

        v.                          Civil Action No. 06-727 (JMF)

GREAT SOCIALIST PEOPLE'S LIBYAN
ARAB JAMAHIRIYA, *et al.*,

    Defendants.

VICTOR SIMPSON, *et al.*,

    Plaintiffs,

        v.                          Civil Action No. 08-529 (JMF)

GREAT SOCIALIST PEOPLE'S LIBYAN
ARAB JAMAHIRIYA, *et al.*,

    Defendants.

MEMORANDUM OPINION

In my earlier opinion, issued on January 29, 2013,[1] I indicated that my calculation of

punitive damages was guided both by Judge Collyer's decision in Gates v. Syrian Arab Republic,

580 F. Supp. 2d 53 (D.D.C. 2008) ("Gates I") and by Chief Judge Lamberth's decision in Valore

v. Islamic Republic of Iran, 700 F. Supp. 2d 52 (D.D.C. 2010).  Regrettably, that was not the

case.

In Gates I, the court awarded each of the deceased victims' families (consisting of two

family members) $150 million in punitive damages, for a total punitive damage award of $300

---

[1] See Buonocore v. Great Socialist People's Libyan Arab Jamahiriya, No. 06-CIV-727, 2013 WL 35154 (D.D.C. Jan. 29, 2013).

million. Gates I, 580 F. Supp. 2d at 75.  That case involved the taped beheading of two American

civilian contractors by "al-Qaeda in Iraq." Id. at 56.

In Valore, the court applied a mean-terrorism-expenditures-times-five formula, and

awarded $1 billion in punitive damages, to be "apportioned among the plaintiffs in proportion to

their relative compensatory-damages awards." Valore, 700 F. Supp. 2d at 90.  That case involved

the murder of 241 American military servicemen in a bombing of the U.S. Marine barracks in

Beirut, Lebanon by Hezbollah, with the support of the Iranian government. Id. at 57, 75.

In Buonocore and Simpson, I awarded each of the 26 plaintiffs, who successfully brought

a private federal cause of action pursuant to 28 U.S.C. § 1605A(c), $150 million in punitive

damages, for a total punitive damages award of $3,900,000,000 or $3.9 billion, an amount which

far exceeds the punitive damages awards in Gates I or Valore.  I have now concluded that my

opinion was incorrect insofar as it did that.

In awarding each plaintiff punitive damages, I ignored the fundamental difference

between an award of punitive damages and an award of compensatory damages.  As I noted in

my earlier opinion, although the purpose of punitive damages is to punish outrageous conduct

and deter its future occurrence, it must be predicated on the individualized and particular harm

suffered by the person who was injured or killed. Buonocore, 2013 WL 35154, at *30.  That is

not to say, however, that an award of punitive damages is designed to be particularized per

victim.  Rather, the court must arrive at a number that will serve the interest of deterrence.  In

other words, the court must find that the amount of punitive damages awarded is at least great

enough to grab the tortfeasor's attention in order to convince him that the expense associated

with the continuation of his behavior will outweigh any perceived benefit.  In cases involving

terrorism, one way of calculating that amount has been to ascertain the amount of money that the

defendant spends aiding and abetting terrorist groups to perpetrate their outrageous conduct.  The court then takes that figure and applies a multiplier, depending upon the egregiousness of the incident or, as in Valore, an increase in the funding of terrorism.  See Valore, 700 F. Supp. 2d at 89-90) ("Although this level of punitive damages is significantly higher than any previously rendered against Iran, the award is justified by the continuing need to punish and deter Iran from its increasing support of terrorism . . .").

My error was to mistakenly combine, in one punitive damage award, the goals of deterrence and compensation.  They must be kept separate, lest obvious inequities arise.  As I noted above, as my opinion currently stands, the 26 plaintiffs would receive $3.9 billion in punitive damages when the 241 plaintiffs in Valore only received $1 billion.  That result cannot be justified by any reason that I can see.  Accordingly, I will vacate my previous individualized award of punitive damages in favor of a comprehensive award to all plaintiffs of an amount that I hope will deter Syria from continuing to sponsor terrorist activities.  Following Valore, I shall take the figure of $600 million, the average amount of Syria's annual expenditures on terrorism,[2] and apply a multiplier of five, to arrive at a total punitive damage award of $3 billion.  While that is greater than the $1 billion awarded in Valore, the amount spent by Syria to support terrorist activities in this case is greater than the amount spent by Iran in Valore.

Finally, I note that my earlier damages calculation erroneously awarded prejudgment interest on a subtotal that included the punitive damage award.  An amended chart is attached and an amended judgment will also be separately issued.

Digitally signed by John M. Facciola
DN: c=US, st=DC, l=Washington,
email=john_m._facciola@dcd.usco
urts.gov, o=United States District
Court for the District of Columbia,
cn=John M. Facciola
Date: 2013.02.12 11:24:08 -05'00'

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE

---

[2] According to the testimony of Dr. Marius Deeb, Syria spends between $500 and $700 billion annually on terrorism-related expenditures. Buonocore, 2013 WL 35154, at *30.

| Plaintiff | Compensatory Damages | | | Total Comp. Damages | Prejudgment Interest | Subtotal A (Comp. Damages + Interest) | Punitive Damages Award | Total Award (Subtotal A + Punitive Damages Award) |
|---|---|---|---|---|---|---|---|---|
| | Economic | Pain & Suffering | Solatium | | | | | |
| Don Maland (estate of) | $2,344,959.00 | $1,000,000.00 | | $3,344,959.00 | $19,070,390.30 | $22,415,349.30 | $115,384,615.38 | $137,799,964.68 |
| Einar Maland (estate of) | | | $5,000,000.00 | $5,000,000.00 | $28,506,164.49 | $33,506,164.49 | $115,384,615.38 | $148,890,779.88 |
| Jane Maland | | | $2,500,000.00 | $2,500,000.00 | $14,253,082.25 | $16,753,082.25 | $115,384,615.38 | $132,137,697.63 |
| Mark Maland | | | $2,500,000.00 | $2,500,000.00 | $14,253,082.25 | $16,753,082.25 | $115,384,615.38 | $132,137,697.63 |
| Ellen Maland | | | $2,500,000.00 | $2,500,000.00 | $14,253,082.25 | $16,753,082.25 | $115,384,615.38 | $132,137,697.63 |
| Tim Maland | | | $2,500,000.00 | $2,500,000.00 | $14,253,082.25 | $16,753,082.25 | $115,384,615.38 | $132,137,697.63 |
| Grace Maland (estate of) | | | $5,000,000.00 | $5,000,000.00 | $28,506,164.49 | $33,506,164.49 | $115,384,615.38 | $148,890,779.88 |
| John Buonocore, III (estate of) | $2,388,125.00 | | | $2,388,125.00 | $13,615,256.82 | $16,003,381.82 | $115,384,615.38 | $131,387,997.20 |
| John Buonocore, Jr. | | | $5,000,000.00 | $5,000,000.00 | $28,506,164.49 | $33,506,164.49 | $115,384,615.38 | $148,890,779.88 |
| Cecile Buonocore | | | $5,000,000.00 | $5,000,000.00 | $28,506,164.49 | $33,506,164.49 | $115,384,615.38 | $148,890,779.88 |
| Todd Buonocore | | | $2,500,000.00 | $2,500,000.00 | $14,253,082.25 | $16,753,082.25 | $115,384,615.38 | $132,137,697.63 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Frederick Gage (estate of) | $3,420,069.00 | | | $3,420,069.00 | $19,498,609.90 | $22,918,678.90 | $115,384,615.38 | $138,303,294.28 |
| Nancy Gage | | | $2,500,000.00 | $2,500,000.00 | $14,253,082.25 | $16,753,082.25 | $115,384,615.38 | $132,137,697.63 |
| Charles Shinn (estate of) | | $1,000,000.00 | $4,000,000.00 | $5,000,000.00 | $28,506,164.49 | $33,506,164.49 | $115,384,615.38 | $148,890,779.88 |
| Jeanne Shinn (estate of) | | $1,000,000.00 | $4,000,000.00 | $5,000,000.00 | $28,506,164.49 | $33,506,164.49 | $115,384,615.38 | $148,890,779.88 |
| Michael Sweis (estate of) | | $1,000,000.00 | $2,500,000.00 | $3,500,000.00 | $19,954,315.15 | $23,454,315.15 | $115,384,615.38 | $138,838,930.53 |
| Aida Sweis (estate of) | | | $4,000,000.00 | $4,000,000.00 | $22,804,931.60 | $26,804,931.60 | $115,384,615.38 | $142,189,546.98 |
| Jeanette Sweis | | $1,000,000.00 | $1,250,000.00 | $2,250,000.00 | $12,827,774.02 | $15,077,774.02 | $115,384,615.38 | $130,462,389.41 |
| Juliet Sweis | | $1,000,000.00 | $1,250,000.00 | $2,250,000.00 | $12,827,774.02 | $15,077,774.02 | $115,384,615.38 | $130,462,389.41 |
| Sayel Sweis | | | $1,250,000.00 | $1,250,000.00 | $7,126,541.12 | $8,376,541.12 | $115,384,615.38 | $123,761,156.51 |
| Saied Sweis | | $250,000.00 | $1,250,000.00 | $1,500,000.00 | $8,551,849.35 | $10,051,849.35 | $115,384,615.38 | $125,436,464.73 |
| Natasha Simpson (estate of) | $1,291,125.00 | | | $1,291,125.00 | $8,652,129.33 | $12,911,256.70 | $115,384,615.38 | $128,295,872.09 |
| Antonia Daniela Simpson | | | $5,000,000.00 | $5,000,000.00 | $28,506,164.49 | $33,506,164.49 | $115,384,615.38 | $148,890,779.88 |
| Victor Simpson | | $1,000,000.00 | $5,000,000.00 | $6,000,000.00 | $34,207,397.39 | $40,207,397.39 | $115,384,615.38 | $155,592,012.78 |
| Michael Simpson | | $1,000,000.00 | $2,500,000.00 | $3,500,000.00 | $19,954,315.15 | $23,454,315.15 | $115,384,615.38 | $138,838,930.53 |
| Elena Tommarello (estate of) | | $1,000,000.00 | | $1,000,000.00 | $5,701,232.90 | $6,701,232.90 | $115,384,615.38 | $122,085,848.28 |